UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ALBERT WINFREY-BEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-cv-3235-JES |
| | ) | |
| DANIEL SHREVE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER AND OPINION**

This matter is now before the Court on Defendants' Motion for Summary Judgment. Doc. 77 (the "Motion"). Plaintiff filed a Response (Doc. 84), and Defendants filed a Reply. Doc. 91. For the following reasons, the Motion is GRANTED in part and DENIED in part.

I.      **Background**

A.  **Procedural History**

Plaintiff is proceeding against Defendants Daniel Shreve, Jeffrey Benton, William Applegate, Vernon DeWitt, and Billy Goodman in their individual capacities for violating his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, when he was denied his religious medallion and the opportunity to order a replacement. *See* Doc. 35. On March 8, 2023, the Defendants filed a Motion for Summary Judgment. Doc. 77. Plaintiff filed his Response on July 3, 2023. Doc. 84. On July 24, 2023, Defendants filed a Reply. Doc. 91.

The Court reviewed the Motion and discovered it erred at the merit review stage by allowing the RLUIPA claim to proceed against the Defendants in their individual capacities, as RLUIPA provides for injunctive relief only and should be pled against an individual who, in his or her official capacity, has the authority to grant such relief. *See Grayson v. Goetting*, NJR-15-

1

198, 2015 WL 887800, at *4 (S.D. Ill. Feb. 27, 2015). The Court, without objection by the parties, amended the Merit Review Order (Doc. 35) to allow the RLUIPA claim to proceed only against Defendant DeWitt in his official capacity as Assistant Warden. Doc. 95 at 1-3.

The Court also noted that while Defendants had raised qualified immunity as an affirmative defense (Doc. 49), they had not discussed this issue in the Motion for Summary Judgment. The Court notified the Parties that, in the event it found that Defendants had violated Plaintiff's First Amendment rights, it intended to rule on the issue of qualified immunity at summary judgment. *Id.* at 3-4, giving the Parties an opportunity to brief the matter.

The Court, having been fully briefed on the issues in this case, is now appropriately positioned to resolve the Motion.

### B. Summary Judgment Briefing

As a preliminary matter, the Court acknowledges that Plaintiff's brief (Doc. 84) does not comport with the Local Rules of the Central District of Illinois. Local Rule 7.1(D)(2)(b) provides that a response to a summary judgment motion must state, in separate subsections: undisputed material facts, disputed material facts, disputed immaterial facts, undisputed immaterial facts, and additional material facts. Local Rule 7.1(D)(2)(b)(6) cautions, "[a] failure to respond to any numbered fact will be deemed an admission of the fact." *Id*. Likewise, Fed. R. Civ. P. 56(e)(2) provides that when a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may, *inter alia*, "consider the fact undisputed for the purposes of the motion."[1] Defendants also take issue with Plaintiff's proffer of various exhibits which are not identified and cited to in the facts section.

---

[1] Fed. R. Civ. P. 56(c)(3) states that "[t]he court need consider only the cited materials, but it may consider other materials in the record."

Plaintiff's discussion of material facts in his Response was so lacking in compliance with the Local Rules that it would be untenable for Defendants to submit a proper Reply. Therefore, to the extent it appears that Defendants could not properly respond to Plaintiff's additional or disputed facts due to Plaintiff's failure to comply with the Local Rules, the Court deems Defendants' statement of fact to be admitted. *See Poole v. United States GAO*, 1 F. App'x. 508, 510 (7th Cir. 2001); *Bordelon v. Chicago Sch. Reform Bd. of Trs*., 233 F.3d 524, 527 (7th Cir. 2000)).

However, Court will exercise its discretion by reviewing the transcript of Plaintiff's deposition and other materials in the record, as the Court "is confident in its ability to understand which material facts are actually in dispute, as supported by the record." *White v. Felchner*, SEM-19-3181, 2021 WL 3223067, at *2 (C.D. Ill. July 29, 2021); *Latko v. Cox*, No. 20-2634, 2021 WL 5234863, at *2 (7th Cir. Nov. 10, 2021). In other words, the Court will not necessarily accept Defendants' facts as true solely because Plaintiff failed to properly dispute them.

### C.  Undisputed Material Facts

As indicated above, Plaintiff failed to properly respond to Defendants' statement of undisputed material facts. Therefore, unless otherwise noted, the following facts are undisputed. *See* CDIL-LR 7.1(D)(2)(b)(6); Fed. R. Civ. P. 56(e)(2).

Plaintiff has identified as belonging to the Moorish Science Temple of America ("MTSA"), *i.e.*, as a Moorish American, since 1983. SOF ¶ 2 (citing Doc. 77-1 (Winfrey-Bey Depo.) at 33); Doc. 77-1 at 32. Moorish American is a sect of Islam. Doc. 77-1 at 33. Moorish Americans, among other religious beliefs, observe holy days, follow a holy book/sacred writing, pray, and engage in communal worship services on Fridays. SOF ¶ 3 (citing Doc. 77-7 (excerpt concerning the Moorish American religion from the Chaplain's Handbook). Other Moorish American practices

include utilizing prayer rugs, assuming the name "Bey" or "El" in conjunction with a legal name, and not eating pork. Doc. 77-7.

Of relevance here, a Circle 7 medallion is a religious symbol worn only by Moorish Americans who have attained the level of Adept. SOF ¶ 4 (citing Doc. 77-7; Doc. 77-1 at 37). These medallions are typically double-sided, with a base color of red, white, or blue. SOF ¶ 5 (Doc. 77-7). The medallion design can include a star, a sword, the word Justice, the letters L.T.P.F., the number 7, four gold boxes, and the word Allah. Doc. 77-7. Plaintiff has worn a Circle 7 medallion since he became an Adept in 1998. Doc. 77-1 at 36-37. In 2001, Plaintiff was incarcerated and is currently in the custody of the Illinois Department of Corrections ("IDOC"). SOF ¶ 7; Doc. 77-1 at 38-39. While he initially wore a medallion made by a "gifted brother," it was confiscated, and he then wore a "makeshift" medallion. Doc. 77-1 at 39; SOF ¶ 11.

On June 13, 2019, while incarcerated at Centralia Correctional Center ("Centralia"), Plaintiff, following proper IDOC procedures, ordered a Circle 7 medallion from www.lauterer.com. SOF ¶¶ 8, 10; *see also* Doc. 77-8 (Circle 7 order form from Centralia). The appearance of the medallion is as follows, Doc. 77 at 2 n.1 (citing https://www.lauterer.com/MA6-KEYRING-CIRCLE7.aspx):



4

Plaintiff received his Circle 7 medallion, as shown above, on approximately June 18, 2019. SOF ¶ 9 (citing Doc. 77-1 at 43).

Later that year, on September 23, 2019, Plaintiff was transferred from Centralia to Graham. SOF ¶ 12 (citing Doc. 77-1 at 19). When individuals are transferred, their property is placed into a box and inventoried to ensure compliance with facility rules and to determine any safety or security risks. SOF ¶¶ 16-17. On or about September 27, 2019, Defendant William Applegate, the property officer at Graham, administered Plaintiff's property box. SOF ¶ 18 (citing Doc. 77-4 (Applegate Decl.) at 2). Defendant Applegate contacted Defendant Daniel Shreve, the Senior Chaplain at that time, asking whether the medallion was permitted. SOF ¶¶ 19-20; Doc. 77-4 at 2; Doc. 77-2 (Shreve Decl.) at 1. Applegate confiscated Plaintiff's medallion, per Shreve's instruction, on the basis that it had too many colors and was therefore a security threat because gangs, or Security Threat Groups ("STG"), use religious symbols and their colors as a membership identifier. SOF ¶¶ 13-15, 21-23, 32; Doc. 77-5 at 2 (response of Plaintiff's grievance); Doc. 77-3 (Billy Goodman Decl. at 1).[2] Defendant Shreve determined that Plaintiff could not possess the medallion, citing Ill. Adm. Code tit. 20 § 425.90(c)(4), which states that "[r]osary beads shall be a solid color, either black, brown, or white, and shall not be permitted to be worn as jewelry," to all religious items. SOF ¶¶ 28- 30 (citing Doc. 77-2 at 2).

"On or about October 2, 2019, Applegate advised Plaintiff that his confiscated items, including his Circle 7 medallion, must be mailed, destroyed," or otherwise disposed of. SOF ¶ 24 (citing Doc. 77-4 at 2). Plaintiff indicated that he wanted the facility to retain some of the items, including his medallion, as he would file a grievance to get the items back. *Id*. On October 3, 2019,

---

[2] During the relevant timeframe, Goodman was an officer in internal affairs at Graham, and he monitored STG activity. SOF ¶ 34; Doc. 77-3 at 1.

Plaintiff filed a grievance concerning the confiscation of his medallion. Doc 77-5 at 3-4 (Plaintiff's initial grievance); SOF ¶ 26. Plaintiff's grievance was denied. Doc 77-5 at 1-2. In December 2020, Plaintiff ordered an identical replacement medallion. SOF ¶ 54; Doc. 77-1 at 51-53. The replacement medallion was allegedly received at the facility but withheld. *Id.* Plaintiff filed another unsuccessful grievance. *Id.* at 72.

On or about March 17, 2021, Plaintiff met with Defendant Goodman, an internal affairs officer, about an unrelated matter and questioned him about the denial of his Circle 7 medallion. SOF ¶ 35 (citing Doc. 77-3 at 2). In response, Goodman emailed Defendant Jeffrey Benton, who served as Temporary Assignment Chaplain I, to inquire about Plaintiff's medallion. SOF ¶¶ 33, 36; Doc. 77-3 at 2; Doc. 77-6 (Benton Decl.) at 1. Benton advised that the medallion was denied due to its colors. SOF ¶ 35 (citing Doc. 77-6 at 2). Benton notified Plaintiff that he could wear a gray Circle 7 medallion or order a medallion that is silver or gold toned. Plaintiff declined to do so as he believes the gray Circle 7 medallions, as he has seen other inmates wear, do not adequately capture the characteristics of a legitimate Circle 7 medallion. SOF ¶¶ 51-53; Doc. 77-1 at 74-77; Doc. 77-6 at 2.

## II.    Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations, or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997).

"[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

The non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "must do more than simply show that there is some metaphysical doubt as to the material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986) (quotation and citation omitted)); *see also Noll v. Bd. of Regents of Univ. of Wisconsin Sys.*, No. 21-3176, 2022 WL 2113081, at *2 (7th Cir. June 13, 2022) ("[T]he non-moving party cannot sit back and rest solely on its briefing in opposition for its claims to advance to trial."). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to successfully oppose a summary judgment motion; "there must be evidence on which the [factfinder] could reasonably find for the [non-movant]." *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936 (7th Cir. 2022) (citation omitted).

### III.    Discussion

As an initial matter, the Court notes that Plaintiff's RLUIPA and First Amendment claims share similar analytical frameworks. *Cf. Edgewood High Sch. of the Sacred Heart, Inc. v. City of Madison, Wisconsin*, 95 F.4th 1080, 1090 (7th Cir. 2024) (in the context of a RLUIPA land use case, circuit precedent permits a district court to analyze a "plaintiff's Free Exercise and RLUIPA substantial burden claims together '[g]iven the similarities between RLUIPA § 2(a)(1) and First Amendment jurisprudence'") (citing *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 996 (7th Cir. 2006)). As such, the Court shall examine the claims together, while noting the differences in

the elements of each claim. *See, e.g.*, *Moore v. Jeffreys*, CSB-22-4004, 2023 WL 8167311, at *3 n.3 (C.D. Ill. Nov. 13, 2023).

Correctional facilities must permit inmates a reasonable opportunity to exercise religious freedom. *See Maddox v. Love*, 655 F.3d 709, 719 (7th Cir. 2011).[3] "Both the Free Exercise Clause of the First Amendment and RLUIPA protect an inmate's right to practice his religion." *Williams v. Moffett*, FUV-18-5563, 2021 WL 825670, at *13 (N.D. Ill. Mar. 3, 2021) (citing *Oliver v. Harner*, NJR-14-315, 2016 WL 1117084, at *7 (S.D. Ill. Mar. 22, 2016)). However, despite covering the same subject matter, RLUIPA "offers broader protections than the First Amendment…." *Woods v. Gladieux*, HAB-22-383, 2023 WL 2645990, at *2 (N.D. Ind. Mar. 27, 2023). One such difference lies in the manner of religious practice sought to be protected.

"The Free Exercise Clause of the First Amendment prohibits the government from imposing a 'substantial burden' on a 'central religious belief or practice.'" *Sand v. Milwaukee Cnty. House of Corr.*, WCG-19-348, 2022 WL 912283, at *8 (E.D. Wis. Mar. 29, 2022) (citation omitted). In contrast, though RLUIPA also prohibits a government from imposing a substantial burden on religious exercise, it "has a broader scope of protection than 'central religious beliefs or practices,'" and covers "'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Koger v. Bryan*, 523 F.3d 789, 802-03 (7th Cir. 2008) (quoting 42 U.S.C. § 2000cc–5(7)(A)). In other words, religious exercise under RLUIPA need not be central to be protected. "A claim under either the RLUIPA or the First Amendment begins with proof of a sincere religious belief." *Sharp v. Liebel*, JED-20-327, 2021 WL 4147036, at *4 (N.D. Ind. Sept. 13, 2021) (citing *United States v. Seeger*, 380 U.S. 163, 185 (1965)). The Supreme Court

---

[3] Although "[p]risoners retain the right to exercise their religious beliefs, [] that right is not unfettered." *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009).

[previously observed that] "a religious belief [is] 'not merely a matter of personal preference, but one of deep religious conviction, shared by an organized group, and intimately related to daily living.'" *EEOC v. IBP, Inc.*, 824 F. Supp. 147, 150 (C.D. Ill. 1993) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972)). At present, the Parties do not dispute the sincerity of Plaintiff's religious belief, and so the Court moves on to determine whether Plaintiff's religious exercise was substantially burdened.

"Claims under the First Amendment and RLUIPA are evaluated under the substantial burden test, which requires the plaintiff to show that the defendant substantially burdened his free exercise rights." *Murphy v. Comm'r, Ind. Dep't of Corr.*, JRS-19-571, 2021 WL 4263660, at *3 (S.D. Ind. Sept. 20, 2021) (citing *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 814 (8th Cir. 2008)).[4] "A substantial burden 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016) (quoting *Thomas v. Review Bd.*, 450 U.S. 707, 717-18 (1981)). An isolated instance that impacts an inmate's religious practice will often be "de minimis" and "not of constitutional dimension." *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (citations omitted).

Defendants claim that the denial of Plaintiff's Circle 7 medallion cannot constitute a substantial burden on his religious practice because he is still able to identify as a Moorish American due to medallion alternatives. Doc. 77 at 13-14. Defendants also note that not all Moorish Americans are entitled to wear Circle 7 medallions and that Plaintiff waited 18 years

---

[4] Defendants do not pursue summary judgment as to the RLUPA claim on the basis that denying the medallion substantially burdened Plaintiff's religious practice, although they make this argument as to Plaintiff's First Amendment claim. As the same standards apply to both claims, I analyze the issue as dispositive of either cause of action.

before ordering an official medallion. *Id.*[5] Defendants cite *Kaufman v. Pugh*, 733 F.3d 692, 699 (7th Cir. 2013), for the proposition that "not being allowed to wear an individualized ring does not prove a substantial burden on an individual's ability to practice" their religion. Doc. 77 at 13. However, the holding in *Kaufman* was not so broad. Rather, the Seventh Circuit concluded that "the inability to wear the ring does not impose a 'substantial burden' on Kaufman's ability to practice atheism" because "the ring is an individualized symbol." *Kaufman*, 733 F.3d at 699. Unlike the plaintiff in *Kaufman*, the record clearly shows that the Circle 7 medallion is more than an individualized symbol, and it is recognized in the IDOC Chaplain handbook. Doc. 77-7. Thus, *Kaufman* is of minimal persuasive value.

More relevant to the case at bar is *Knowles v. Pfister*, 829 F.3d 516 (7th Cir. 2016). In *Knowles*, the Seventh Circuit concluded that a Wiccan practitioner's religious exercise may have been substantially burdened when Pontiac Correctional Center did not allow him to possess a pentacle medallion. *Knowles*, 829 F.3d at 518-19. Indeed, district courts in the Seventh Circuit routinely conclude that a denial of an inmate's religious medallion can substantially burden that individual's religious practice. *See, e.g.*, *Suane v. Nollman*, SMY-21-1343, 2021 WL 5882121, at *2 (S.D. Ill. Dec. 13, 2021); *Kruger v. Baldwin*, RJD-19-268, 2021 WL 1165115, at *5 (S.D. Ill. Mar. 26, 2021); *Ruffin v. Baldwin*, NJR-18-1774, 2019 WL 293236, at *3 (S.D. Ill. Jan. 23, 2019); *but see Henderson v. Kennell*, HAB-07-1102, 2007 WL 1424550, at *2 (C.D. Ill. May 10, 2007) ("It is doubtful the plaintiff could demonstrate that denying him an Islamic medallion substantially burdened a central religious belief or practice.").

---

[5] In focusing on Plaintiff's ability to identify as a Moorish American rather than to properly uphold his religious practice, Defendants' argument misses the mark.

Furthermore, it is not clear from the record whether Defendants' suggested alternative medallions actually qualify as a legitimate Circle 7 medallion. For example, the Chaplain's Handbook clearly describes such medallions as having a base color of red, white, or blue, with other coloring, such as gold, mixed in. Doc. 77-7. This is in contrast to the gray medallion that Defendants propose as an alternative. *Cf. Collins v. Oates*, CMH-21-219, 2024 WL 115796, at *5 (E.D. Va. Jan. 10, 2024) (dismissing First Amendment and RLUIPA claims because the medallion offered by the prison "complied with plaintiff's expressed requirements").

At a minimum, viewing inferences in Plaintiff's favor, there is a dispute of material fact as to whether Plaintiff's religious exercise was substantially burdened through the denial of his Circle 7 medallion. The Court now turns to whether there is justification for Defendants imposing a substantial burden on Plaintiff's religious practice.

"RLUIPA prohibits a 'government' from 'impos[ing] a substantial burden on the religious exercise of a person residing in or confined to an institution,' unless the 'imposition of the burden on that person' satisfies two factors, the first of which asks whether the burden is 'in furtherance of a compelling governmental interest.'" *Walker v. Baldwin*, 74 F.4th 878, 880-81 (7th Cir. 2023) (quoting 42 U.S.C. § 2000cc-1). On the other hand, "[t]he First Amendment prohibits a substantial burden on Plaintiff's religious exercise unless the burden is reasonably related to a legitimate penological interest." *Sim-Bey v. Jester*, SEM-20-1055, 2023 WL 3112943, at *3 (C.D. Ill. Mar. 30, 2023) (citing *Neeley-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003-04 (7th Cir. 2019)). The compelling government interest standard is "more than the reasonable relation to a legitimate penological interest required under current First Amendment precedent." *Young v. Ericksen*, 758 F. Supp. 2d 777, 784 (E.D. Wis. 2010) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349

(1987)). Nevertheless, the Court reviews the government's interest in connection with both causes of action, because the claimed interest is the same, and it satisfies RLUIPA's stricter standard.

Defendants claim that their interest in denying Plaintiff the medallion is to limit STG activity. Doc. 77 at 9-11. The Seventh Circuit has clearly stated that "[i]t is beyond question that prisons have a legitimate interest in preventing gang activity…." *Walker v. McCaughtry*, 141 F. App'x. 460, 461 (7th Cir. 2005) (citing *Rios v. Lane*, 812 F.2d 1032, 1037 (7th Cir. 1987)). Indeed, Defendant Goodman has testified that STG activity is a problem at Graham. In his Response, Plaintiff does not dispute this statement, nor does he even argue that limiting STG activity is not a compelling interest. Plaintiff unavailingly asserts, without evidence, that STG activity at Graham is less than at other IDOC facilities. This assertion, on its own, does not serve to undermine Goodman's claim or lessen Graham's need to prevent gang activity. Doc. 84 at 10-11. Accordingly, Defendants have established a sufficient interest in limiting STG activity at Graham.

However, a compelling or legitimate interest, on its own, is insufficient. Under RLUIPA, in addition to showing a compelling government interest, a defendant must prove that the substantial burden "is the least restrictive means" of furthering that interest. *West v. Radtke*, 48 F.4th 836, 844 (7th Cir. 2022) (citing *Ramirez v. Collier*, 595 U.S. 41, 425 (2022)).

Unlike RLUIPA, under the First Amendment inquiry, "prison officials are not required to choose the least restrictive option when enacting a policy." *Sebolt v. Samuels*, 749 F. App'x. 458, 461 (7th Cir. 2018) (citing *Hammer v. Ashcroft*, 570 F.3d 798, 801 (7th Cir. 2009)). "The Seventh Circuit has identified four factors for evaluating the constitutionality of prison restrictions: (1) whether the restriction 'is rationally related to a legitimate and neutral governmental objective;' (2) 'whether there are alternative means of exercising the right that remain open to the inmate;' (3) 'what impact an accommodation of the asserted right will have on guards and other inmates;' and

(4) 'whether there are obvious alternatives to the [restriction] that show that it is an exaggerated response to [penological] concerns.'" *West v. Kind*, BHL-22-178, 2023 WL 6388947, at *7 (E.D. Wis. Sept. 29, 2023) (quoting *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004) in turn citing *Turner v. Safley*, 482 U.S. 78, 89-91 (1987)). All four factors are important, but "the first one can act as a threshold factor regardless [of] which way it cuts." *Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010). And, "courts must afford prison administrators 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Henry v. Hulett*, 969 F.3d 769, 783 (7th Cir. 2020) (en banc) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

As to the first factor, whether the denial of Plaintiff's Circle 7 medallion is rationally related to Defendants' need to limit STG activity, the Court finds in Plaintiff's favor. While Defendants note that "[t]he main identifiers of any STG within the institutional setting are symbols and colors," Doc. 77 at 5, in *Schlemm v. Wall*, 784 F.3d 362 (7th Cir. 2015), the Seventh Circuit reversed the trial Court's finding that a ban of multi-colored religious headgear was the least restrictive means of serving a compelling interest in "suppressing gang identification." The Seventh Circuit noted, *inter alia*, the following considerations:

> The prison system does not contend that any given gang's members are unaware of which other prisoners belong to the same gang. The ban on colored headwear apparently is designed to reduce any gang's adherents' ability to advertise their status to non-members. We say "reduce" rather than "eliminate," because Wisconsin does not compel inmates to remove gang-related tattoos and has only limited ability to police a ban on gang-related speech and hand signals. Because gang information may be widely available already, it is difficult to depict as "compelling" a desire to cut out one potential means of identification.

*Schlemm*, 784 F.3d at 366.

Defendants' argument suffers from the same flaws highlighted by the Seventh Circuit. Here, Defendants do not contend that colors are the only way for gang members to identify one

13

another, or for that matter, whether gang information is not otherwise available through other means, such as tattoos or gang-related communications.

Here, Defendants' cursory argument that Plaintiff's Circle 7 medallion could lead to increased STG activity fails to demonstrate a rational connection between prohibiting Plaintiff's medallion and furthering institutional security. *See Hummel v. Donahue*, DFH-07-1452, 2008 WL 2518268, at \*4 (S.D. Ind. June 19, 2008) ("Prison officials have the burden of proving not just that they have a compelling interest in safety and security of prisons, but that their policy that substantially burdens individuals' free exercise of religion furthers that interest."). Such reasoning, seemingly based largely on speculation, or at a minimum, disputed material facts, cannot defeat Plaintiff's claim.

The second factor concerns whether Plaintiff has an alternative means of worship. Defendants correctly point out that Plaintiff can exercise his religion in many different ways at Graham. Doc. 77 at 13-15. Indeed, Plaintiff testified that he is able to practice his religion and that he attends special religious gatherings on Fridays. Doc. 77-1 at 35-36, 86. As a matter of law, this is sufficient to weigh in Defendants' favor. *See Larry v. Goldsmith*, 700 F. App'x. 413, 415 (7th Cir. 2020).[6]

The third factor asks what kind of effect a religious accommodation will have on prison guards and other inmates. Defendants argue that they will "necessarily" permit other inmates to have religious items that are blue, yellow, and red if Plaintiff is constitutionally entitled to his tri-colored medallion. Doc 77 at 15. Defendants seem to suggest that this will allow other prisoners

---

[6] Defendants also aver that the alternative monotoned medallion supports their argument as to the second factor. Doc. 77 at 15. However, Plaintiff clearly takes issue with the alternative medallion's authenticity and suitability as a replacement, so this point concerns a dispute of material fact. Doc. 77-1 at 76.

to use colored medallions to identify with gangs, and therefore increase risks to inmates as well as guards. *Id.* at 15-16. However, as noted, there is limited support in the record for this and Defendants' fear that this case will have ripple effects is unfounded, with the possible exception that Moorish American Adepts may likely look to this case for guidance.

The fourth factor cuts in favor of Plaintiff's claim as well. Defendants argue that there are no "[o]bvious easy alternatives to…limiting the colors of religious items." Doc. 77 at 16. Defendants fail to discuss other feasible alternatives to a wholesale ban on tri-colored Circle 7 medallions. For example, the Seventh Circuit concluded that a prisoner donning a colored religious headband was not a "plausible means of signaling gang membership" if its use is limited "to his cell (where few other inmates will see it) or group religious ceremonies…." *Schlemm*, 784 F.3d at 366. Similarly, the Seventh Circuit opined that when a prisoner wears a religious medallion under his shirt, the medallion may be prevented from being used to identify the prisoner as a gang member. *Knowles*, 829 F.3d at 519. A factfinder could conclude that, rather than outright prohibiting the possession of a tri-colored Circle 7 medallion, Graham could have restricted its use or visibility so there would be a lessened danger of signaling STG activity.

In light of the above, the Court finds that Graham's generalized restriction of tri-colored religious medallions was neither the least restrictive means of furthering its compelling interest in limiting STG activity, nor consistent with First Amendment protections. Accordingly, the Court will now consider whether Defendants are entitled to qualified immunity on Plaintiff's First Amendment claim.

 "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established [] constitutional rights of

which a reasonable person would have known." *Brown v. LaVoie*, 90 F.4th 1206, 1214 (7th Cir. 2024) (citation omitted).

Qualified immunity analysis turns on two inquiries: (1) "whether the facts, taken in the light most favorable to the party asserting the injury[,] show that the [government actor's] conduct violated a constitutional right[,]" and (2) "whether the right at issue was 'clearly established' at the time of the ... alleged misconduct." *Tousis v. Billiot*, 84 F.4th 692, 697 (7th Cir. 2023) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). And, "courts may exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pierner-Lytge v. Hobbs*, 60 F.4th 1039, 1044 (7th Cir. 2023) (quotation omitted). Here, the Court first addresses whether the right at issue was clearly established, and in finding it was not, declines to address whether the Defendants are personally liable for Plaintiff's underlying constitutional violation.

"To be clearly established at the time of the challenged conduct, the right's contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right...." *Doe v. Gray*, 75 F.4th 710, 716-717 (7th Cir. 2023) (citations omitted). Furthermore, the right must be "beyond debate" and defined with specificity. *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (citations omitted). Thus, to show the existence of a clearly established right, a plaintiff must "identify a reasonably analogous case that articulated the constitutional right at issue and applied it to a similar factual circumstance, or [] show that the violation was so obvious that a reasonable official in the defendants' positions necessarily would have recognized that their actions violated the Constitution." *Garcia v. Posewitz*, 79 F.4th 874, 880 (7th Cir. 2023) (citing *Cibulka v. City of Madison*, 992 F.3d 633, 640 (7th Cir. 2021)).

16

Defendants' qualified immunity briefing largely hinges on the argument that there is no clear-cut caselaw that stands for the proposition that an inmate is constitutionally entitled to possess a religious artifact, such as a religious medallion. *See* Doc. 99 at 6-7. This case does not concern whether an inmate is generally entitled to a religious medallion, and so the Court need not determine whether an inmate's general right to such an object is clearly established. The issues in this case are narrower, whether Plaintiff, an incarcerated Moorish American, has a constitutional right to possess the particular Circle 7 medallion in question.

Plaintiff unavailingly focuses on the IDOC's historical knowledge of the Circle 7 medallion coupled with the IDOC's longstanding approval of the medallion. *See* Doc. 105 at 3-5; *see also id.* at 8. However, as Defendants suggest (Doc. 107 at 2), the IDOC's past practices, as related to the Circle 7 medallion, do not imply that a constitutional right was clearly established. And, to the extent that Defendants' denial of the medallion controverts an IDOC regulation or policy, the Court notes that "'[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.'" *Hambright v. Kemper*, 705 F. App'x 461, 463 (7th Cir. 2017) (quoting *Davis v. Scherer*, 468 U.S. 183, 193–94 (1984)).

To defeat a claim of qualified immunity, it must be demonstrated that, at the time the defendants acted, it was certain that their conduct violated the law." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 620 (7th Cir. 2002) (citing *Duda v. Bd. of Educ.*, 133 F.3d 1054, 1062 (7th Cir. 1998)). The case law does not establish that Plaintiff's right a Circle 7 medallion was so self-evident. The Court notes that many of the relevant cases discussed *supra* involved alleged violations of RLUIPA rather than the First Amendment. Although these cases provide some

17

guidance, they could not have possibly set forth a clearly established First Amendment right to a Circle 7 medallion.

While prison officials are permitted to balance legitimate penological interests with a prisoner's religious freedoms, "there do not appear to be any cases that instruct prison officials on how they should strike the appropriate balance between [the] competing interests" of penological security and religious exercise as it relates to an inmate's right to a religious medallion, let alone a Circle 7 medallion. *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1000 (7th Cir. 2019). A mistake as to the right balance does not defeat the Defendants' privilege to qualified immunity. *See Mordi v. Zeigler*, 770 F.3d 1161, 1163 (7th Cir. 2014). Indeed, such a mistake appears reasonable, and the alleged constitutional violation non-obvious, given that some prisoners use the colors on medallions and other garb to identify with particular gangs, and a neutral-colored religious medallion, as offered to Plaintiff, may generally be a permissible substitute for a colored religious medallion. *See Bostic v. Vasquez*, 652 F. Supp. 3d 971, 991 n.18 (N.D. Ind. 2023) ("… a plaintiff must not simply show that an established right was taken away, but also that any reasonable official would know that the particular actions they took, or did not take, would constitute a deprivation of that right.").

In light of the foregoing, Plaintiff has failed to meet his "burden of demonstrating that his rights were clearly established to overcome qualified immunity." *Tate v. Carr*, JDP-20-302, 2023 WL 4234704, at *8 (W.D. Wis. June 28, 2023) (citing *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011)). Therefore, Defendants are entitled to qualified immunity as to Plaintiff's First Amendment claim and are DISMISSED with prejudice from the suit in their individual capacities.

The Court now turns to whether Plaintiff could be entitled to injunctive relief under RLUIPA. As alluded, "RLUIPA only provides for injunctive relief against state officials, not monetary damages." *Richmond v. Walker*, DRL-23-649, 2023 WL 8004919, at *2 (N.D. Ind. Nov. 16, 2023) (citing *Sossamon v. Texas*, 563 U.S. 277, 285 (2011)). RLUIPA does not "permit a cause of action against state employees; it permits relief only against 'governmental bodies that receive funds and accept the conditions attached by the statute.'" *Kucinsky v. IDOC*, RJD-23-342, 2023 WL 520781, at *4 (S.D. Ill. Aug. 14, 2023) (quoting *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011)). Therefore, as discussed *supra*, Defendant DeWitt in his official capacity as Assistant Warden is the only defendant against whom Plaintiff's RLUIPA claim may be lodged. Accordingly, Plaintiff's RLUIPA claim is dismissed to the extent it is brought against all Defendants in their respective individual capacities. For the reasons discussed above, the evidence viewed in favor of Plaintiff as the non-movant could lead a factfinder to conclude that Plaintiff is entitled to injunctive relief in the form of permission to possess the tri-colored Circle 7 medallion. Thus, Plaintiff's claim may proceed against DeWitt in his official capacity, as he may provide such a remedy as Assistant Warden.[7]

## IV.    Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. 77) is DENIED as to Plaintiff's RLUIPA claim but GRANTED as to Plaintiff's First Amendment claim. With Plaintiff's First Amendment claim now out, this means the only available relief to Plaintiff is equitable in nature. As such, he has no right to a jury trial. *See Kramer v. Banc of Am. Securities,*

---

[7] Defendant DeWitt is not entitled to qualified immunity on the RLUIPA claim, as the remedy is purely injunctive. *See West v. Grams*, 607 F. App'x 561, 566 (7th Cir. 2015) (noting that a magistrate judge erred in permitting qualified immunity to serve as a defense to a RLUIPA action).

*LLC*, 355 F.3d 961, 966 (7th Cir. 2004) ("There is no right to a jury where the only remedies sought (or available) are equitable."). The Court, therefore, will hold a bench trial on Plaintiff's remaining RLUIPA claim, assuming the Parties do not otherwise settle the suit. *See* Fed. R. Civ. P. 39(a)(2) ("The trial on all issues so demanded must be by jury unless ... the court, on motion or on its own, finds that on some of all of those issues there is no federal right to a jury trial."). Such practice is routine in cases where a sole RLUIPA claim, or a RLUPA claim joined with a First Amendment claim for injunctive relief, survives summary judgment. *See, e.g.*, *Immanuel Baptist Church v. City of Chi.*, ___ F. Supp. 3d ___, 2023 WL 7130408 (N.D. Ill. 2023).

   **It is therefore ORDERED:**

   1.      Defendants' Motion for Summary Judgment [77] is GRANTED IN PART and DENIED IN PART. Defendants William Applegate, Billy Goodman, Daniel Shreve, and Jeffrey Benton are DISMISSED with prejudice from the suit. The Clerk is directed to TERMINATE Defendants Applegate, Goodman, Shreve, and Benton;

   2.      Defendant Vernon DeWitt is DISMISSED with prejudice from the suit in his individual capacity but remains in the suit in his official capacity in connection with Plaintiff's claim for injunctive relief under RLUIPA;

   3.      The Court hereby schedules the matter for Bench Trial to begin on Monday, November 18, 2024, at 9:00 a.m. by personal appearance of the parties before Judge James Shadid in Courtroom A of the Federal Court in Peoria, Illinois. The Final Pretrial Conference is scheduled for November 7, 2024, at 9:00 a.m. by telephone conference; the Court will enter a separate order regarding the proposed final pretrial order and dial-in instructions. The Clerk is to issue writs for Plaintiff's appearance at the Final Pretrial Conference and Bench Trial; and

4.      If the Parties believe settlement negotiations might be fruitful, they are to notify the Court within 60 days of this Order and the matter will be referred to the Magistrate Judge for a settlement conference.

Entered on this 9th day of May 2024.

s/James E. Shadid
James E. Shadid
UNITED STATES DISTRICT JUDGE
